# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE ROCKPORT COMPANY, LLC, *et al.,* | ) | Case No. 18-11145 (LSS) |
| | ) | |
| Debtors.[1] | ) | Joint Administration Requested |
| | ) | |
| | ) | **Obj. Deadline:  May 29, 2018 at 4:00 p.m. (ET)** |
| | ) | **Hr'g Date:  June 5, 2018 at 2:00 p.m. (ET)** |
| | ) | |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONDUCT STORE CLOSING SALES AT THEIR NORTH AMERICAN RETAIL LOCATIONS AND (B) PAY STORE CLOSING BONUSES TO EMPLOYEES AT THE CLOSING STORES AND (II) GRANTING RELATED RELIEF

The Rockport Company, LLC ("**Rockport**") and certain of its affiliates that are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**") hereby file this motion (this "**Motion**") for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as Exhibit A, under Sections 105, 363, and 554 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et. seq.* (the "**Bankruptcy Code**"), Rules 6004 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing, but not directing the Debtors to (a) conduct store closing sales (the "**Store Closing Sales**") at the Debtors' retail stores in the United States and Canada

---

[1] The debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are: Rockport Blocker, LLC (5097), The Rockport Group Holdings, LLC (3025), TRG 1-P Holdings, LLC (4756), TRG Intermediate Holdings, LLC (8931), TRG Class D, LLC (4757), The Rockport Group, LLC (5559), The Rockport Company, LLC (5456), Drydock Footwear, LLC (7708), DD Management Services LLC (8274), and Rockport Canada ULC (3548).  The debtors' mailing address is 1220 Washington Street, West Newton, Massachusetts 02465.

(collectively, the "**Closing Stores**")[2] in accordance with the terms of the store closing sale guidelines attached as Exhibit 1 to the Proposed Order (the "**Store Closing Sale Guidelines**") and (b) pay retention and shrink bonuses (the "**Store Closing Bonuses**") to non-insider retail employees at the Closing Stores who remain employed for the duration of the Store Closing Sales and (ii) granting certain related relief.  This Motion is supported by the *Declaration of Paul Kosturos in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "**First Day Declaration**").[3]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

3.      On May 14, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases for relief under the Bankruptcy Code.  The Debtors

---

[2] A list of the Closing Stores subject to the Store Closing Sales is attached hereto as Exhibit B.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

5.      Debtor Rockport Canada ULC is the operating entity for the Debtors' business in Canada.  The Debtors anticipate commencing an ancillary proceeding under Part IV of the Companies' Creditors Arrangement Act (Canada) in Toronto, Ontario, Canada before the Ontario Superior Court of Justice (Commercial List).  Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## **RELIEF REQUESTED**

6.      By this Motion, pursuant to Sections 105, 363, and 554 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6007, and Local Rule 6004-1, the Debtors request entry of the Proposed Order (i) authorizing the Debtors to (a) conduct the Store Closing Sales in accordance with the Store Closing Sale Guidelines and (b) pay the Store Closing Bonuses to non-insider store-level employees and (ii) granting related relief.

## **THE STORE CLOSING SALES**

**A.      North American Retail Assets**

7.      As set forth in more detail in the First Day Declaration, the Debtors' North American retail assets comprise a total of 27 stores in the United States and 33 stores in Canada, including related inventory (collectively, the "**North American Retail Assets**").  Of those stores, the Debtors operate both full-price and outlet stores.  The stores are serviced by the

Debtors warehousing and distribution centers in California and Ontario, Canada.   At the warehousing and distribution centers, the Debtors designate certain stored inventory for distribution to the stores and wholesale business, as opposed to their eCommerce business.

8.      Besides the inventory located at the stores or designated for distribution thereto, the Debtors' North American Retail Assets also consist of furniture, fixtures, and equipment ("**FF&E**") and other miscellaneous property of the Debtors located at the stores.

**B.      Pre-Petition Sale Process**

9.      Prior to the Petition Date, the Debtors, with the assistance of their advisors, conducted a robust marketing process for a potential sale of all or substantially all of the Debtors' assets.   This process culminated in the execution of that certain Asset Purchase Agreement, dated as of May 13, 2018 (the "**Stalking Horse Agreement**"), between the Debtors and CB Marathon Opco, LLC (the "**Stalking Horse Bidder**"), an affiliate of Charlesbank Equity Fund IX, Limited Partnership, relating to the sale of substantially all of the Debtors' assets.   The North American Retail Assets, however, are currently identified as "Excluded Assets" under the Stalking Horse Agreement.   The Stalking Horse Bidder, however, is still considering whether to purchase any portion of the North American Retail Assets.   As a result, the Stalking Horse Agreement provides that for a period of twenty-five (25) days following the Petition Date (the "**No Liquidation Period**") the Debtors shall not sell or otherwise dispose of any Inventory (as defined in the Stalking Horse Agreement) other than in the ordinary course of business.   The No Liquidation Period is intended to preserve ordinary inventory levels at the retail locations should the Stalking Horse Bidder decide to acquire any of the North American retail locations.

10.      Although the Stalking Horse Bidder is contemplating acquiring a portion of the North American Retail Assets, based on the Debtors' extensive prepetition marketing process and the feedback and expressions of interest received from prospective purchasers, the Debtors

do not expect there to be any significant interest in the North American Retail Assets. Accordingly, immediately following the No Liquidation Period, the Debtors intend to commence the wind down of their North American retail business pursuant to the Store Closing Sales, excluding those North American Retail Assets acquired by the Stalking Horse Bidder, if any. Indeed, the Debtors intend to commence the Store Closing Sales as soon as possible in an effort to conclude the sales by July 31, 2018, if possible, thereby stemming the incurrence of any August administrative rent.

11.     While the Debtors are seeking to have the Store Closing Sale Motion considered by the Court prior to the conclusion of the No Liquidation Period, and to commence the Store Closing Sales as soon as permitted under the Stalking Horse Agreement, the Debtors will have the ability to remove any location from the list of Closing Stores (and refrain from conducting a Store Closing Sale) with regard to any retail location designated by the Stalking Horse Bidder during the No Liquidation Period (or in the event that another potential bidder expresses a material interest in pursuing such retail leases).

## C.     Store Closing Sale Guidelines

12.     The Debtors propose implementing the Store Closing Sale Guidelines, substantially in the form attached as Exhibit 1 to the Proposed Order, to facilitate seamless Store Closing Sales and the closure of the Closing Stores.  The Debtors have determined that, in the exercise of their business judgment and in consultation with their advisors, implementing the Store Closing Sale Guidelines will provide the most timely and efficient means for maximizing the value of the Store Closing Sales and the North American Retail Assets.  The Debtors have significant institutional experience in conducting store closing sales and believe that they will be able to manage the process in a manner that will maximize value for the Debtors' stakeholders. The Debtors, however, are currently considering employing a consultant to assist them in the

conduct of the Store Closing Sales.  The Debtors entry into an agreement with any such consultant, however, would be subject to the approval of this Court in connection with a subsequently filed motion or application.

13.    Upon the Court's approval of this Motion and in accordance with the Store Closing Sale Guidelines, the Debtors may, but are not directed to, begin to employ more aggressive sales techniques if and as needed, including using "store closing sale" or similar signage.  Such a decision to more aggressively market the Store Closing Sales will be directly linked to the units of inventory sold by the Stores at various points during the Store Closing Sales, keeping in mind the date by which the Debtors must vacate such Closing Stores in order to maximize the value of the Store Closing Sales at such Closing Stores.

14.    In accordance with the Store Closing Sale Guidelines, the Debtors will make every reasonable effort to sell all transferrable North American Retail Assets at the Closing Stores as quickly and efficiently as possible for the purpose of monetizing such assets and vacating the Closing Stores as soon as possible to minimize administrative expense obligations (including through the sale of any remaining inventory to retail "jobbers").[4]  As described above, in addition to inventory, the North American Retail Assets include the FF&E located at the Closing Stores.  Although the Debtors will seek to sell the FF&E, during the course of the Store Closing Sales the Debtors may determine that the costs associated with the continued storage and sale efforts with respect to the FF&E are likely to exceed the projected proceeds that could be realized from the sale thereof, or that certain FF&E or other remaining assets may have low

---

[4] In connection with the Store Closing Sale process, and as part of the relief requested in this Motion, the Debtors also seek authority to sell any remaining inventory to retail "jobbers" as the Debtors near the conclusion of the Store Closing Sales.  A retail "jobber" is a merchant or middle person who purchases goods from a manufacturer or retailer in lots or bulk and resells the goods to another retailer (e.g., a discount department store), who then sells such goods to the consumer.  By selling any remaining inventory to "jobbers" as they are nearing the conclusion of the Store Closing Sales, the Debtors are hopeful that they can conclude the sales by July 31, 2018 and thereby stem the incurrence of any administrative rent for the month of August.

prospects for resale.  In such event, any remaining North American Retail Assets would likely impose a financial burden on the Debtors' estates, in the form of storage and removal costs, but are unlikely to provide much, if any, value in return to the estates (all such remaining property at the Closing Stores, the "**Remaining Property**").

15.     By this Motion, the Debtors request authority to designate any property located at the Closing Stores as Remaining Property and to abandon such Remaining Property located at any of the Closing Stores once the applicable Store Closing Sale has terminated.  Before designating any assets as Remaining Property and/or abandoning any Remaining Property at any Closing Store, the Debtors will have determined in the exercise of their sound business judgment that such Remaining Property to be abandoned by the Debtors is either (a) burdensome to the estates because removal and storage costs for the Remaining Property are likely to exceed any net proceeds therefrom or (b) of inconsequential value and benefit to the estates.

16.     For the avoidance of doubt, the Debtors do not propose to, and will not, sell or abandon any assets that contain personal and/or confidential information about the Debtors' employees and/or customers.  The Debtors will utilize all commercially reasonable efforts to remove all such personal and/or confidential information from any items before they are sold or abandoned.  Accordingly, the Debtors submit that the appointment of a consumer privacy ombudsman is not warranted or required for purposes of the Store Closing Sales.

**D.     Compliance with Lease Provisions, Liquidation Sale Laws, and Wage Laws**

17.     By this Motion, the Debtors request that the Court find unenforceable or waive any contractual restrictions that could otherwise inhibit or prevent the Debtors' ability to maximize recovery through the Store Closing Sales.  In certain cases, the Store Closing Sales may be inconsistent with certain provisions of leases, subleases, vendor contracts, or other documents associated with the Closing Stores, including reciprocal easement agreements,

agreements containing covenants, conditions, and restrictions, including "go dark" provisions and landlord recapture rights, or other similar documents or provisions.

18.     Additionally, certain states and localities in which the Debtors operate stores have or may have laws, rules, regulations, or ordinances regarding licensing or other requirements governing the conduct of store closings, liquidations, or other inventory clearance sales (collectively, the "**Liquidation Sale Laws**").  Liquidation Sale Laws may establish licensing, permitting or bonding requirements, waiting periods, time limits, and bulk sale restrictions that would otherwise apply to the Store Closing Sales.  Certain requirements may hamper the Debtors' efforts to maximize the value of their North American Retail Assets.  Thus, the Debtors seek authority from the Court to conduct the Store Closing Sales in accordance with the Store Closing Sale Guidelines without complying with the Liquidation Sale Laws, to the extent that the two are inconsistent.

19.     If a dispute arises with any governmental unit regarding Store Closing Sales and Liquidation Sale Laws, the Debtors propose that such dispute be resolved in accordance with the procedures set forth in the Proposed Order.

20.     Many states in which the Debtors operate also have laws and regulations that require entities to pay an employee substantially contemporaneously with his or her termination (the "**Wage Laws**," and together with the Liquidation Sale Laws, the "**Applicable State Laws**"). In many cases, such Wage Laws require the payment to occur immediately or within a period of only a few days from the date such employee is terminated.  Under ordinary circumstances, the Debtors' payroll department is able to coordinate delivery of final checks to coincide with an employee's final day of work where required by state law.  However, the nature of the Store Closing Sales contemplated by this Motion will result in a substantial number of employees

RLF1 19333026V.1

being terminated during the Store Closing Sales as such sales are completed at the Closing Stores. The Debtors' payroll systems will likely be unable to process all of the payroll information associated with these terminations in a manner that will be compliant with the Wage Laws. Given the number of employees who will likely be terminated during the Store Closing Sales, this process could easily take several days, making compliance with the Wage Laws burdensome to the Debtors' estates, if not impossible. Therefore, the Debtors seek a waiver of compliance with the Wage Laws. To be clear, the Debtors intend to pay their terminated employees as expeditiously as possible, including the Store Closing Bonuses, in any event no later than the later of (a) the Debtors' next regular payroll and (b) seven (7) calendar days after the employee's termination.

21.     The Debtors also request that the Court order that no person or entity, including, without limitation, utilities, landlords, contract counterparties, suppliers, creditors, and all persons acting for or on their behalf, shall interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords of the Closing Stores in any court (other than in this Court) or before any administrative body in any way that directly or indirectly interferes with, obstructs, or otherwise frustrates the conduct of the Store Closing Sales, including the advertising and promotion (including through the posting of signs) thereof.

22.     By this Motion, the Debtors do not seek, nor does the Proposed Order operate, to release the Debtors from complying with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising.

### E.      Store Closing Bonuses

23.      The Debtors have traditionally offered Store Closing Bonuses to employees at retail locations subject to Store Closing Sales.  More specifically, the Debtors typically offer a "retention bonus" to employees who stay through the completion of a Store Closing Sale and maintain satisfactory work performance, which includes working the scheduled hours, maintaining the store to established standards and adhering to loss prevention guidelines.  The "retention bonus" program covers managers, assistant managers, 3rd key and sales associates (including part-time associates) at the Closing Stores.  Managers and assistant managers are also eligible for a "shrink bonus" if they achieve a shrink goal of -.25% or less.

24.      To ensure maximum success at the Store Closing Sales, the Debtors seek authorization to pay Store Closing Bonuses to employees at the store level who remain employed at the Closing Stores through the Store Closing Sales.  The Debtors intend to use their discretion in determining the appropriate amount of the Retention Bonuses for each respective employee, based upon a number of different factors, including, but not limited to, the seniority of the employee, the anticipated responsibilities of the employee in connection with the Store Closing Sales and the anticipated length of the Store Closing Sale at the location in question.  The Debtors estimate that the total aggregate cost of the Store Closing Bonuses will not exceed $300,000.  For the avoidance of doubt, the Debtors do not seek authority to pay any Store Closing Bonuses to insiders of the Debtors, and do not seek authority to pay any Store Closing Bonuses until the conclusion of the Store Closing Sale at each Closing Store.

## APPROVAL OF THE RELIEF REQUESTED IS WARRANTED AND IN THE BEST INTERESTS OF THE DEBTORS AND THEIR STAKEHOLDERS

**A.    Commencing the Store Closing Sales as Soon as Possible and Implementing the Store Closing Sale Guidelines Constitute a Sound Exercise of the Debtors' Business Judgment**

25.    Ample authority exists for approval of the Store Closing Sales contemplated by this Motion.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although Section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

26.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard:   (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *In*

*re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

     **i.**     *The Debtors Have Demonstrated Sound Business Justifications for the Store Closing Sales*

27.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 148 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1070–71; *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (recognizing the paramount goal of any proposed sale of property of estate is to maximize value). Indeed, the Store Closing Sale Guidelines are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: to maximize the value of sale proceeds received by the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to maximize and protect the value of the estate's assets); *In re Food Barn Stores, Inc.*, 107 F.3d at 564–65 (recognizing that a main goal of any proposed sale of property of a debtor's estate is to maximize value).

28.    Courts in this district have approved similar store closing or liquidation sale procedures in chapter 11 cases involving retail debtors. *See, e.g.*, *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 8, 2018) [D.I. 318]; *In re Aerogroup Int'l, Inc.*, No. 17-11962 (KJC) (Bankr. D. Del. Oct. 18, 2017) [D.I. 180]; *In re Central Grocers, Inc.*, No. 17-10993 (LSS) (Bankr. D. Del. May 17, 2017) [D.I. 191]; *In re Gen. Wireless Operations, Inc.*, No. 17-10506 (BLS) (Bankr. D. Del. Mar. 29, 2017) [D.I. 322]; *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) [D.I. 1700]; *In re Golfsmith Int'l*

RLF1 19333026V.1

*Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) [D.I. 267]; *In re Haggen Holdings, LLC*, No. 15-11874 (KG) (Bankr. D. Del. Oct. 15, 2015) [D.I. 447].

29.    Accordingly, the Debtors submit that there is ample, and sound, business justification for authorizing the Store Closing Sales and implementing the Store Closing Sale Guidelines.

### ii.    *Notice of the Store Closing Sales is Reasonable and Appropriate*

30.    Notice of this Motion and the Store Closing Sales is being provided in accordance with Bankruptcy Rule 2002 to all contract or lease counterparties at the Closing Stores and all applicable governmental units, in addition to the Debtors' top thirty (30) largest unsecured creditors and those parties that have requested notice.  As such, notice of this Motion is reasonably calculated to provide all parties in interest with adequate and timely notice of the Store Closing Sales.

### iii.    *The Store Closing Sales Will Produce Fair and Reasonable Prices for the North American Retail Assets*

31.    As set forth above, the Debtors believe that the Store Closing Sales will maximize the value of the North American Retail Assets while minimizing additional expenses, thereby producing a fair and reasonable purchase price for such assets.  Given the extensive pre-petition marketing process conducted by the Debtors and the expressions of interest received from prospective bidders, unless the Stalking Horse Bidder designates certain North American retail leases during the No Liquidation Period in accordance with the Stalking Horse Agreement, the Debtors do not believe that the North American Retail Assets will be included in any going concern bids received as part of the post-petition sale process.  Accordingly, the Debtors believe the Store Closing Sales are the best option to produce fair and reasonable returns of value to their estates for the North American Retail Assets.

RLF1 19333026V.1

iv.    *The Debtors Efforts to Sell the North American Retail Assets Have Been in Good Faith to Maximize Value to the Estates*

32.    As set forth in more detail in the First Day Declaration, the Debtors extensively marketed the North American Retail Assets in the pre-petition sale process.  Unfortunately, however, no bidders expressed interest in a substantial portion of the North American Retail Assets, and the Stalking Horse Agreement currently identifies the North American Retail Assets as "Excluded Assets".  In keeping with their duty to maximize value to the estates, *see In re Mushroom Transp. Co.*, 382 F.3d at 339, the Debtors have determined the best path forward for the North American Retail Assets is to commence the Store Closing Sales in accordance with the Store Closing Sale Guidelines, subject to the Stalking Horse Bidder's rights under the Stalking Horse Agreement to elect to include any portion of the North American Retail Assets in the purchased assets.

33.    Based on the foregoing, the Debtors submit that they have demonstrated that the Store Closing Sales and Store Closing Sale Guidelines are sound exercises of the Debtors' business judgment, are justified under the facts and circumstances of the Chapter 11 Cases, and should be approved by the Court.

**B.    The Assets Should Be Sold Sale Free and Clear of Liens, Claims, Interests, and Encumbrances under Section 363(f) of the Bankruptcy Code**

34.    The Debtors request approval to conduct the Store Closing Sales on a final "as is" basis, free and clear of any and all liens, claims, interests, and encumbrances.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if any one of the following conditions is satisfied:

a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b.    such entity consents;

14

   c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

   d.  such interest is in bona fide dispute; or

   e.  such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

   35. Section 363(f) of the Bankruptcy Code is supplemented by Section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

   36. The Debtors anticipate that, to the extent there are liens on the North American Retail Assets, the Debtors submit that all known holders of such liens either (i) have consented to or will each consent to the sales thereof because such sales provide the most effective, efficient, and time-sensitive approach to realize proceeds for the North American Retail Assets, or (ii) could be compelled to accept a money satisfaction of such lien.  To the extent any party in interest has a lien, claim, interest or encumbrance in the North American Retail Assets, such lien, claim, interest or encumbrance will attach to the proceeds of the Store Closing Sales with the same validity and priority that such liens had against such assets prior to the sales, subject to the

rights and defenses of the Debtors and any other party in interest.  Accordingly, the Debtors

believe that they will be able to satisfy one or more of the conditions of Section 363(f).

37.    Moreover, parties in interest will receive notice of this Motion and will have the

opportunity to object to the relief requested herein.  Any such entity that does not object to the

Store Closing Sales will be deemed to have consented.  *See Hargrave v. Twp. of Pemberton (In*

*re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (finding that failure to object to sale

after receiving notice of such sale constitutes consent and satisfies section 363(f)); *In re Elliot*,

94 B.R. at 345 (same).  Therefore, to the extent that no party holding a lien on the North

American Retail Assets objects to the relief requested herein, the Store Closing Sales free and

clear of all liens, claims, and encumbrances satisfy Section 363(f) of the Bankruptcy Code.  In

any event, all liens on the North American Retail Assets will attach to the proceeds of the Store

Closing Sales with the same validity and priority that such liens had against such assets.

## C.    The Store Closing Sales Should Be Exempt from any Restrictive Provisions in Leases, or Such Restrictive Provisions Should Be Invalidated as Unenforceable

38.    The Debtors respectfully request that the Court waive or invalidate any

contractual restrictions in the leases or other documents governing the Stores.  Store closing or

liquidation sales are a routine part of Chapter 11 cases involving debtors in the retail industry.

Such sales are consistently approved by courts, despite provisions in recorded documents,

contracts, leases, or agreements purporting to forbid such sales.  Indeed, such restrictive

provisions are unenforceable in bankruptcy because they constitute an impermissible restraint on

a debtor's ability to maximize the value of its assets for the estate.  *See, e.g.*, *In re R.H. Macy &*

*Co.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994); *In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359

(Bankr. S.D.N.Y. 1992).  Further, any such contract or agreement is unenforceable against the

Debtors pending assumption or rejection thereof.  *See In re Univ. Med. Ctr.*, 973 F.2d 1065,

1075 (3d Cir. 1992) (citing *In re Bildisco*, 465 U.S. 513, 532 (1984)); *In re Nat'l Steel Corp.*, 316 B.R. 287, 302-07 (Bankr. N.D. Ill. 2004).

39.     Courts in this district have entered orders deeming such restrictive contractual provisions unenforceable in the context of store closing or liquidation sales in bankruptcy, or approved such sales notwithstanding contractual provisions to the contrary.  *See, e.g.*, *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 8, 2018) [D.I. 318]; *In re Aerogroup Int'l, Inc.*, No. 17-11962 (KJC) (Bankr. D. Del. Oct. 18, 2017) [D.I. 180]; *In re Central Grocers, Inc.*, No. 17-10993 (LSS) (Bankr. D. Del. May 17, 2017) [D.I. 191]; *In re Gen. Wireless Operations, Inc.*, No. 17-10506 (BLS) (Bankr. D. Del. Mar. 29, 2017) [D.I. 322]; *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) [D.I. 1700]; *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) [D.I. 267]; *In re Haggen Holdings, LLC*, No. 15-11874 (KG) (Bankr. D. Del. Oct. 15, 2015) [D.I. 447].

40.     Moreover, the Store Closing Sale Guidelines, like the liquidation sale guidelines approved in other cases like those cited above, provide the appropriate protections for any legitimate concerns that landlords or other affected parties might have with respect to the conduct of the Store Closing Sales.

41.     Accordingly, the Debtors request that the Court authorize the Debtors to conduct the Store Closing Sales consistent with the Store Closing Sale Guidelines, without compliance with any restrictive contractual provisions to the extent such restrictions are inconsistent with the Store Closing Sale Guidelines.

**D.     The Debtors Should Be Exempt from Compliance with the Applicable State Laws**

42.     The Debtors request that the Court exempt the Debtors from compliance with the Liquidation Sale Laws and Wage Laws so that the Debtors can operate the Store Closing Sales to maximize the value of the North American Retail Assets.

43.     First, Liquidation Sale Laws often provide that if a liquidation sale is authorized by a court, then a company need not comply with the applicable Liquidation Sale Laws.  The Store Closing Sales are subject to the approval of this Court; as such, they would fall under any such exemption.

44.     Second, this Court has the inherent equitable power pursuant to Section 105(a) of the Bankruptcy Code to authorize the Debtors to conduct the Store Closing Sales notwithstanding contrary Liquidation Sale Laws.  *See, e.g.*, *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 8, 2018) (authorizing liquidation sales notwithstanding state liquidation sale laws) [D.I. 318]; *In re Aerogroup Int'l, Inc.*, No. 17-11962 (KJC) (Bankr. D. Del. Oct. 18, 2017) (same) [D.I. 180]; *In re Gen. Wireless Operations, Inc.*, No. 17-10506 (BLS) (Bankr. D. Del. Mar. 29, 2017) (same) [D.I. 322]; *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) (same) [D.I. 267].

45.     Third, the Store Closing Sales are subject to this Court's exclusive jurisdiction, pursuant to which the Court will be able to supervise the sales.  *See* 28 U.S.C. § 1334.  All creditors, parties in interest, and the public interest represented by the Liquidation Sale Laws will be adequately protected by notice of this Motion and the ongoing supervision of the Store Closing Sales by this Court.  Moreover, 28 U.S.C. § 959(b), which requires debtors-in-possession to comply with state and other laws in the performance of their duties, does not apply to liquidation sales.  *See, e.g.*, *In re Borne Chemical Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) (holding that 28 U.S.C. § 959(b) is applicable only when property is being managed or operated for the purpose of continuing operations, not liquidations).

46.     Fourth, even if a state's Liquidation Sale Law does not expressly exempt bankruptcy sales, the Debtors believe that if such law conflicts with the Bankruptcy Code, it is

preempted by the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. To hold otherwise would severely impair the relief available under section 363 of the Bankruptcy Code and a debtor's ability to operate to maximize the value of its estate, which is one of its duties under the Bankruptcy Code. Consistent with this premise, Bankruptcy Courts have recognized that federal bankruptcy laws preempt state and local laws that contravene the underlying policies of the Bankruptcy Code. *See, e.g., Belculfine v. Aloe (In re Shenango Grp., Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code . . . [A] state statute [ ] cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code"). Although preemption of state law is not always appropriate, as when the protection of public health and safety is involved, *see In re Baker & Drake, Inc.*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (finding no preemption when state law prohibiting taxicab leasing was promulgated in part as a public safety measure), it is appropriate when, as here, the only state laws involved concern economic regulation. *See id.* at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

47.    Fifth, bankruptcy courts have authorized exemptions from Wage Laws in connection with liquidation sales. *See, e.g.*, *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 8, 2018) (authorizing debtors to make final payments to terminated employees by later of (i) next regularly scheduled payroll and (ii) 7 days after such termination) [D.I. 318]; *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) (granting relief from federal, state, or local laws including "any fast pay laws" in connection with store closing sales) [D.I. 267]. As described above, due to the nature of the

Store Closing Sales, the Debtors request relief from the Wage Laws to allow the Debtors to process termination payments and Store Closing Bonus payments to terminated employees in an orderly and efficient fashion.

48.     Accordingly, the Debtors respectfully request that the Court order that the Debtors are exempt from, or presumed to be in compliance with, the Applicable State Laws, as set forth in the Proposed Order.  To the extent that any dispute arises with respect to the Store Closing Sales and Liquidation Sale Laws, the Debtors further request that the Court approve the dispute resolution procedures set forth in the Proposed Order.

**E.     Abandonment of the Remaining Property at the Closing Stores at the Conclusion of the Store Closing Sales Is Warranted under Section 554 of the Bankruptcy Code**

49.     Section 554 of the Bankruptcy Code provides that a debtor is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) ("[A trustee] may abandon his claim to any asset, including a cause of action, he deems less than valuable than the cost of asserting that claim."); *In re Contract Research Solutions, Inc.*, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) ("[A debtor] need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon.") (citations omitted).  The right to abandon property is, except for certain exceptions inapplicable in the present case, unfettered.  *See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506–07 (1986) (noting one such exception and holding that section 554(a) does not preempt state laws aimed at protecting the public's health and safety).  Courts in this district have granted similar relief in liquidation sales of retail debtors.  *See, e.g.*, *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 8, 2018) [D.I. 318]; *In re Aerogroup Int'l, Inc.*, No. 17-11962 (KJC) (Bankr. D. Del. Oct. 18, 2017) [D.I. 180]; *In re*

*Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) [D.I. 1700]; *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) [D.I. 267]; *In re Am. Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 20, 2015) [D.I. 364]; *In re Haggen Holdings, LLC*, No. 15-11874 (KG) (Bankr. D. Del. Oct. 15, 2015) [D.I. 447].

50.     Although the Debtors seek to sell all of the North American Retail Assets, at the conclusion of the Store Closing Sales the Debtors seek authority to designate any remaining assets and personal property at the Closing Stores that has inconsequential value or benefit to the estates, or would be cost prohibitive to remove or sell, as Remaining Property and abandon such property to the landlord of the applicable Closing Store.  Such landlord will be free to dispose of the Remaining Property after the effective date of rejection of the applicable lease free and clear of any liens or interests in such Remaining Property and without any notice or liability to any party.  To the best of the Debtors' knowledge, abandoning any Remaining Property would not be in violation of any state or local statutes or regulation reasonably designed to protect the public health or safety.  Accordingly, abandoning the Remaining Property, which is to be designated by the Debtors in their discretion at the conclusion of the Store Closing Sales, as of the effective date of rejection of the applicable leases should be approved.

**F.     Payment of the Store Closing Bonuses Is Warranted and in the Sound Business Judgment of the Debtors**

51.     As described above, the Debtors seek authority to pay the Store Closing Bonuses to non-insider store-level employees who remain employed at a Closing Store through the conclusion of the Store Closing Sale at such Closing Store.  The Debtors believe that allowing the Store Closing Teams to earn Store Closing Bonuses will provide much-needed motivation for key store personnel who are critical to the success of the Store Closing Sales. The Debtors believe that, absent such bonuses, the Debtors are likely to lose such key personnel at the Closing

Stores at a time when the Debtors have few resources available to search for new employees, which would unnecessarily delay or frustrate the Store Closing Sales and hamstring the Debtors' efforts to maximize the value of the North American Retail Assets. On balance, the Debtors believe that the costs to the Debtors of the Store Closing Bonuses are far outweighed by the benefits such Store Closing Bonuses are likely to produce in the form of maximum productivity and cooperation during the Store Closing Sales, resulting in higher revenues in a shorter timeframe. The Debtors estimate that the aggregate cost of the Store Closing Bonuses will not exceed $300,000.

52.     Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, this Court has the authority to approve the payment of the Store Closing Bonuses. Such bonuses are a typical and effective practice in many store liquidations, and have been approved by this Court in other cases. *See, e.g.*, *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 8, 2018) [D.I. 318]; *In re Aerogroup Int'l, Inc.*, No. 17-11962 (KJC) (Bankr. D. Del. Oct. 18, 2017) [D.I. 180]; *In re Gen. Wireless Operations, Inc.*, No. 17-10506 (BLS) (Bankr. D. Del. Mar. 29, 2017) [D.I. 322]; *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) [D.I. 267]. Because the Store Closing Bonuses will not be paid to insiders, they are not prohibited by or subject to the requirements of Section 503(c) of the Bankruptcy Code.

53.     The Debtors submit that the Store Closing Bonuses are justified under the facts and circumstances of the Chapter 11 Cases and should be approved in order to maximize the value of the Store Closing Sales.

## G.     The Appointment of a Consumer Privacy Ombudsman for the Store Closing Sales Is Not Required by Section 363(b)(1)

54.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor may not sell or lease personally identifiable information unless such sale or lease is consistent with the debtor's

policies or upon appointment of a consumer privacy ombudsman in accordance with Section 332 of the Bankruptcy Code.  11 U.S.C. § 363(b)(1)(B).  As noted above, the Debtors will ***not*** sell or abandon any North American Retail Assets, including, but not limited to, FF&E, containing any personally identifiable or confidential information regarding the Debtors' employees or customers.  Therefore, appointment of a consumer privacy ombudsman is not necessary.

### NECESSITY OF WAIVER OF STAY, AND WAIVER OF FURTHER NOTICE OF PROPOSED ABANDONMENT

55.     The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a).  The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to maximize and preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

56.     Bankruptcy Rule 6007 provides that "[u]nless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees . . . appointed pursuant to § 1102 of the [Bankruptcy] Code."  Fed. R. Bankr. P. 6007.  To the extent that notice of this Motion (for the proposed abandonment of any Remaining Property) does not satisfy Bankruptcy Rule 6007, the Debtors request that the Court waive the requirements of such

rule and authorize the Debtors to abandon any Remaining Property at the Closing Stores at the conclusion of the Store Closing Sales without any further notice or order of the Court. All parties who are required to receive notice of such proposed abandonment under Bankruptcy Rule 6007 will receive notice of this Motion and have the opportunity to object. Accordingly, the Debtors respectfully submit that, because of the reasons set forth herein Bankruptcy Rule 6007 has either been satisfied or should be waived.

## <u>NOTICE</u>

57.    Notice of this Motion will be given to: (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Brya M. Keilson, brya.keilson@usdoj.gov; (ii) the Debtors' thirty (30) largest unsecured creditors, as identified in their Chapter 11 petitions; (iii) counsel to the Prepetition Noteholders and DIP Note Purchasers, (a) Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, Attn: My Chi To, mcto@debevoise.com, and Daniel E. Stroik, destroik@debevoise.com, and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Bradford J. Sandler, bsandler@pszjlaw.com and James E. O'Neill, joneill@pszjlaw.com; (iv) counsel to the Collateral Agent and DIP Notes Agent, (a) Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, Illinois 60603, Attn: Joshua Spencer, joshua.spencer@khlaw.com, and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Bradford J. Sandler, bsandler@pszjlaw.com and James E. O'Neil, joneill@pszjlaw.com; (v) counsel to the ABL Administrative Agent and ABL DIP Agent, (a) Riemer Braunstein LLP, Three Center Plaza, 6th Floor, Boston, Massachusetts, 02108, Attn: Donald E. Rothman, drothman@reimerlaw.com, Lon M. Singer, lsinger@reimerlaw.com, Jaime Rachel Koff, jkoff@reimerlaw.com, and Jeremy Levesque, jlevesque@reimerlaw.com, and (b) Ashby &

24

Geddes, P.A., 500 Delaware Ave., 8th Floor, Wilmington, Delaware 19801, Attn: Gregory A. Taylor, GTaylor@ashbygeddes.com; (vi) counsel to the Stalking Horse Bidder, (a) Goodwin Procter LLP, 100 Northern Avenue, Boston, Massachusetts 02210, Attn: Jon Herzog, jherzog@goodwinlaw.com and Joseph F. Bernardi, Jr., jbernardi@goodwinlaw.com, (b) Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: William Weintraub, wweintraub@goodwinlaw.com, and (c) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, Delaware 19899, Attn:    David Fournier, fournierd@pepperlaw.com, and Evelyn Meltzer, meltzere@pepperlaw.com; (vii) all counterparties to leases of the Stores; (viii) all parties with liens, claims, interests, or encumbrances on or against any of the Debtors' North American Retail Assets; (ix) all affected federal, state and local governmental regulatory and taxing authorities, including, but not limited to, the Internal Revenue Service, the Attorney General's office for each state where a Closing Store is located, the county consumer protection agency or similar agency for each county where a Closing Store is located, the division of consumer protection for each state where a Closing Store is located, and the chief legal counsel for the local jurisdiction where a Closing Store is located; and (x) those parties who have requested or are entitled to notice pursuant to Bankruptcy Rule 2002.  A copy of this Motion and any order approving it will also be made available on the Debtors' case information website located at *http://www.cases.primeclerk.com/rockport*.  The Debtors submit that, under the circumstances, no other or further notice is required.

## **NO PRIOR REQUEST**

58.    The Debtors have not previously sought the relief requested herein from the Court or any other court.

RLF1 19333026V.1

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:   May 15, 2018
      Wilmington, Delaware

*/s/ Michael J. Merchant*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Fax:  302-651-7701
Email:  collins@rlf.com
      merchant@rlf.com
      steele@rlf.com
      schlauch@rlf.com

*Proposed Counsel to the Debtors*

RLF1 19333026V.1