IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE ROCKPORT COMPANY, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11145 (LSS)<br><br>Jointly Administered<br><br>Bid Procedures Obj. Deadline: May 29, 2018 at 4:00 p.m.<br>Bid Procedures Hearing: June 5, 2018 at 2:00 p.m.<br><br>Related to Docket No. 24 |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO THE DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (F) GRANTING RELATED RELIEF; AND (II)(A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF**

Federal Insurance Company, Great Northern Insurance Company, Pacific Indemnity Company and ACE American Insurance Company (and together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this reservation of rights (the "Reservation of Rights") with respect to the Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, the Sale of Substantially All of the Debtors' Assets, (D) Approving the Form and

---

[1] The debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are: Rockport Blocker, LLC (5097), The Rockport Group Holdings, LLC (3025), TRG 1-P Holdings, LLC (4756), TRG Intermediate Holdings, LLC (8931), TRG Class D, LLC (4757), The Rockport Group, LLC (5559), The Rockport Company, LLC (5456), Drydock Footwear, LLC (7708), DD Management Services LLC (8274), and Rockport Canada ULC (3548). The debtors' mailing address is 1220 Washington Street, West Newton, Massachusetts 02465.

Manner of Notice of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief; and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief [Docket No. 24] (the "Motion") and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A.   The Bankruptcy Case

1.   On May 14, 2018 (the "Petition Date"), The Rockport Company, LLC and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.   On the Petition Date, the Debtors filed the Motion.[2]

3.   Pursuant to the Motion, the Debtors seek, *inter alia*, an order approving certain Bidding Procedures and the Debtors' Sale of Assets to Successful Bidder(s), Back-Up Bidders(s) or the Stalking Horse Bidder.

4.   In connection with the Motion, the Debtors have provided a proposed Stalking Horse Agreement which provides for the following proposed treatment of insurance policies under the proposed Sale:

> 2.2   Excluded Assets. Nothing contained herein shall be deemed to sell, transfer, assign or convey to Purchaser any of the Excluded Assets, and Sellers shall retain all right, title and interest to, in and under the Excluded Assets. "Excluded Assets" means all assets of

---

[2] All capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

DM3\5211959.1

>Sellers other than Purchased Assets, including all of the following assets, properties, interests and rights of any one or more of Sellers:
>
>...
>
>(m) all insurance policies and binders, all claims, refunds and credits from insurance policies or binders due or to become due with respect to such policies or binders and all rights to proceeds thereof (other than as described in Section 2.1(o)) . . .[.]

5. Notwithstanding the foregoing, the Bid Deadline, Auction and Sale Hearing have yet to occur and thus, the Stalking Horse Agreement may be revised or replaced by a superseding agreement between the Debtors and either the Stalking Horse Bidder or another Successful Bidder.

**B.    The Insurance Programs**

6. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors, as named insureds.

7. Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company provides, *inter alia*, international and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

8. Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance

3

Programs"),[3] Federal Insurance Company, Great Northern Insurance Company and Pacific Indemnity Company provide, *inter alia*, general liability, property, automobile, workers' compensation, international, package, umbrella and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

9. The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

10. The Chubb Companies file this Reservation of Rights to make the Stalking Horse Bidder and any other bidder (including the Successful Bidder) aware that it is the Chubb Companies' position that (A) each of the Insurance Programs must be assumed and assigned, if at all, as a whole; and (B) to the extent that the Debtors seek to assume and assign the Insurance Programs, the Insurance Programs cannot be assigned without the consent of the Chubb Companies, which consent has not been sought or given.

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

4

### A. Each Of The Insurance Programs And The Obligations Thereunder Are Indivisible.

11. It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder. 'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.' The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement.'") (internal citations omitted); *Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 2015 U.S. Dist. LEXIS 90367 (D. Del. Aug. 18, 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owner's Association, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee

or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'").

12. Accordingly, any Successful Bidder cannot receive the benefits of the Insurance Programs without remaining liable for the obligations thereunder. *See In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

13. Moreover, the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. at 202 (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

14. Accordingly, any assumption of the Insurance Programs and the Obligations thereunder must be in its entirety, and the Chubb Companies further reserve their rights to object on this basis.

DM3\5211959.1

**B.     The Insurance Programs Cannot Be Assigned Without The Prior Written Consent Of The Chubb Companies, Which Has Not Been Given.**

15.     To the extent that the Debtors seek to assign the Insurance Programs, such assignment cannot occur without the express written consent of the Chubb Companies.

16.     Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

17.     Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

18.     Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S,

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case involves neither an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior, written consent of the Chubb Companies.

19. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment of the Insurance Programs, the Debtors and any proposed Purchaser or assignee will be required to execute assumption agreements, in form and substance acceptable to the Chubb Companies. As the ultimate proposed assignee is not yet known, this agreement has not yet been negotiated, let alone executed.

20. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs, the Chubb Companies reserve their rights to object to any and all such assignments.

WHEREFORE, the Chubb Companies reserve their rights to assert all of the objections described above in connection with the Motion, and to assert any additional objections to the Motion and agreements related thereto, and the assignment of the Insurance Programs, particularly once the ultimate purchaser is established, including, but not limited to, the right to assert that the

8

DM3\5211959.1

Insurance Programs must be assumed pursuant to § 365 of the Bankruptcy Code and the right to payment of any cure claim as of the closing date of the sale.

Dated: May 23, 2018

Respectfully submitted,

DUANE MORRIS LLP

By: /s/ Richard W. Riley
Richard W. Riley, Esq. (DE Bar No. 4052)
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: 302-657-4928
Fax: 302-657-4901
Email: rwriley@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Drew S. McGehrin, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com
Email: dsmcgehrin@duanemorris.com

*Counsel for the Chubb Companies*

9

DM3\5211959.1